IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1947
(1:15-cv-00869-GLR)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Petitioner-Appellant,

v.

MARITIME AUTOWASH, INC.,

    Respondent-Appellee.

On Appeal from the United States District Court
for Maryland

CORRECTED OPENING BRIEF OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS PETITIONER-APPELLANT

P. DAVID LOPEZ
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

PAULA R. BRUNER
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., 5th Floor
Washington, D.C.  20507
(202) 663-4731
paula.bruner@eeoc.gov

TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

STATEMENT OF JURISDICTION ...................................................1

STATEMENT OF THE ISSUE ...........................................................1

STATEMENT OF THE CASE .............................................................2

    1.   Course of Proceedings.................................................2

    2.   Statement of the Facts ...............................................2

    3.   District Court Decisions.............................................6

SUMMARY OF ARGUMENT ............................................................8

ARGUMENT.......................................................................................9

CONCLUSION ..................................................................................29

CERTIFICATE OF COMPLIANCE ................................................31

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Agri Processor Co. v. NLRB*, 514 F.3d 1 (D.C. Cir. 2008)....................................22

*EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426 (9th Cir. 1983) (en banc)................................................................................................................10

*EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80 (4th Cir.1995) ..........................9

*EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539 (9th Cir. 1987) ..................19

*EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071 (9th Cir. 2001) ................14

*EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920 (11th Cir. 1991) .........................10, 12

*EEOC v. Maryland Cup Corp.*, 785 F.2d 471 (4th Cir. 1986) ..............................13

*EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928 (8th Cir.1985) ..............13

*EEOC v. Randstad*, 685 F.3d 433 (4th Cir. 2012)..................................................10

*EEOC v. The Restaurant Co.*, No. 05-1656, 2007 WL 1576117 (D. Minn. May 31, 2007) ......................................................................................................22

*EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329 (4th Cir.1977).....................13

*EEOC v. Tempel Steel Co.*, 814 F.2d 482 (7th Cir. 1987) .....................................13

*EEOC v. Tortilleria La Mejor*, 758 F. Supp. 585 (E.D. Cal. 1991)................11, 27

*EEOC v. United Air Lines, Inc.*, 287 F.3d 643 (7th Cir. 2002) ............................12

*EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002)..................................................20

iii

*EEOC v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174 (4th Cir. 2011) ..............................................................................14, 28

*Egbuna v. Time–Life Libraries, Inc.*, 153 F.3d 184 (4th Cir. 1998) (per curiam) ................................................................................ passim

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) ..................................10

*Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86 (1973) ............................................11

*FTC v. Gibson*, 460 F.2d 605 (5th Cir. 1972) ............................................................13

*FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) ......................................13

*Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ............................................................19

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) .............. passim

*Iweala v. Operational Tech. Svcs.*, 634 F.Supp.2d 73 (D.D.C. 2009) ...................11

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013)..17, 22

*Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927 (8th Cir. 2013) .........................18,  28

*Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219 (2d Cir. 2006) ....................................................................................17, 28

*Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004) ...................................20, 23

*Rosas et al. v. Alice's Tea Cup, LLC*, No. 14 Civ. 8788(JCF), 2015 WL 4097947 (S.D.N.Y. July 6, 2015) ....................................................17, 22, 27

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984)......................................................21

*U.S v. Sullivan*, 274 U.S. 259 (1927) ................................................................19

STATUTES

28 U.S.C. § 1291..............................................................................................................1

28 U.S.C. § 1331......................................................................................1

National Labor Relations Act, 29 U.S.C. § 152(3) ..............................23

Civil Right Act of 1991, 42 U.S.C. § 1981a ........................................11

Title VII of the Civil Rights Act of 1964

42 U.S.C. § 2000e-2(a)(1) .....................................................................11

42 U.S.C. § 2000e-5(b) ..........................................................................12

42 U.S.C. § 2000e(f)..........................................................................10, 24

42 U.S.C. § 2000e-8(c) ............................................................................1

42 U.S.C. § 2000e-9 .................................................................................1

Railway Labor Act, 45 U.S.C. § 151 *et seq.* .......................................23

**RULES AND REGULATIONS**

Fed. R. App. P. 4(a)(1)(B)(ii)..................................................................1

**OTHER AUTHORITIES**

H. R. Rep . No. 99–682(I) (1986), as reprinted in 1986 U.S.C.C.A.N.
  5649...................................................................................................26

H.R.Rep. No. 99–682(II) (1986), reprinted in 1986 U.S.C.C.A.N. 5757 .........27

## STATEMENT OF JURISDICTION

On March 26, 2015, the Equal Employment Opportunity Commission ("EEOC" or "Commission") filed in the district court a second application for enforcement of its subpoena pursuant to section 710 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-9.  JA-3.[1]  The district court's jurisdiction was based on section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c), and 28 U.S.C. § 1331.   On June 23, 2015, the district court denied the Commission's second application.  JA-315.   On August 20, 2015, the EEOC filed a timely notice of appeal. JA-317; Fed. R. App. P. 4(a)(1)(B)(ii).   Jurisdiction in this Court is based upon 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court erred in refusing to enforce the Commission's subpoena on the grounds that it lacked authority to investigate an undocumented worker's charge of discrimination.

---

[1] "JA" refers to the page number of the Joint Appendix at which the cited document can be found.

<u>STATEMENT OF THE CASE</u>

1.   Course of Proceedings

On March 25, 2015, the Commission filed a second application to

enforce its subpoena.  *EEOC v. Maritime Autowash, Inc.*, No. 1:15-cv-0869

(D. Md.), JA-3, Second Application.  The district court denied it.   JA-315.

The Commission filed a timely appeal.  JA-317.

2.   Statement of the Facts

Maritime operates two full-service carwashes in Maryland.  JA-195,

Escalante Decl. at 2 ¶ 5.  David Podrog is the owner of both facilities. The

Edgewater facility was managed by General Manager Kyle Decker and

Head Manager Ryan Wooldridge. *Id.*

In May 2012, Maritime hired Elmer Escalante.  JA-195, Escalante Decl.

at 2 ¶¶ 4,6.  On Escalante's second day at work, Head Manager Wooldridge

informed him that there was a problem because his name did not match his

social security number and directed him to obtain new papers under a

different name. *Id.* at ¶6.  Escalante returned with papers under the name

Angel Erazo, which Wooldridge accepted.  *Id.*  For a year, Escalante

2

worked under the Erazo name and was called Angel by the managers and employees. *Id.* at ¶7. His pay stubs and W-2 forms were issued under the Erazo name. JA-195-96 at ¶¶9-10; JA-208-14.

In May 2013, after the United States Immigration Customs Enforcement (ICE) conducted an inspection at Respondent's facilities, General Manager Decker held a meeting and told the Hispanic employees that he and owner Podrog had made a decision to give those employees without proper documentation $150 so that they could obtain new papers and be re-hired under new names. JA-196, Escalante Decl. at 3¶11. On May 19, 2013, Escalante presented new papers under his legal name, Elmer Escalante, but with a different social security number, which Wooldridge accepted. *Id.* at ¶14. However, the managers and employees continued to call him Angel. JA-197 at ¶16. Maritime also rehired other Hispanic workers who presented new papers. *Id.* at ¶15.

On July 27, 2013, Escalante and other Hispanic employees complained to the owner and general manager about unequal treatment. Specifically, they stated they were not given a thirty-minute lunch break,

other time for breaks, the same purified water that was given to the non-Hispanics, vacation time, or wage increases. They further complained that they were harassed by the managers and were required to use a bathroom that needed to be repaired and had a camera at its entrance. JA-197, Escalante Decl. at 4 ¶9. That day, Decker terminated Escalante and all the Hispanic employees who had complained. *Id.* at ¶20.

On February 6, 2014, Escalante filed a timely charge of discrimination with the EEOC. JA-33, Escalante Charge; JA-194, Escalante Decl. at 1¶2. He alleged that he and other Hispanic workers as a class had been subjected to unequal terms and conditions of employment, including being required to work longer hours with shorter breaks, not having proper equipment, being assigned additional duties, and being paid less wages, in violation of Title VII. *Id.* On a Record of Disciplinary Action form dated July 28, 2013, JA-48, and in its position statement dated May 22, 2014, Maritime claimed that it terminated Escalante because he "did not show up to scheduled shift." JA-40, Maritime Position Statement ("MPS"). Maritime simultaneously claimed that it terminated Erazo pursuant to the ICE

4

inspection because he was unauthorized to work in the United States (even though Escalante and Erazo are the same person).  JA-40 at n.2, MPS at 2 n.2.  Eleven other Hispanic employees who had been terminated by Maritime also filed charges alleging national origin discrimination.  *See, e.g.*, JA-67 (EEOC Request for Information listing charges).

On May 27, 2014, the EEOC served Maritime with a detailed Request for Information ("RFI") pertaining to Escalante and the other Charging Parties, seeking personnel files, wage records, and other employment data for each charging party and any employee who held the same position as the charging parties for the period January 1, 2012, through the present. JA-67-69, EEOC RFI.  Maritime responded to the Commission's RFI with incomplete information and numerous objections alleging that, except for Escalante, the charging parties were undocumented.  JA-71 & n.2.  In addition, Respondent limited the temporal scope of its responses to the calendar year 2013 and failed to provide other employment data for any individual other than Escalante. JA-72.  However, Maritime did not provide the personnel file or wage records for the period of time that

5

Escalante worked under the name Angel Erazo in 2012.

On July 10, 2014, the EEOC issued Subpoena BA-2014-145 relating only to Escalante's charge.  JA-178.  Maritime refused to produce the subpoenaed documents.   On March 26, 2015, the EEOC filed a second application for subpoena enforcement.  JA-3.  In opposition, Maritime argued that Escalante lacked standing to complain because he was an undocumented worker, that undocumented workers are not covered by Title VII, and the EEOC therefore lacked jurisdiction to investigate Escalante's charge. JA-226-34. The company also referenced due process, relevancy and burdensomeness arguments.  JA-235.   Finally, Maritime claimed that since it sold the assets of its business, it had no employees to search its records and provide the EEOC with the requested information. *Id.*

3.  District Court Decision

On June 23, 2015, the district court issued a letter order denying the EEOC's second application for subpoena enforcement.  JA-316.  The court stated that it was undisputed that, during his employment with Maritime,

6

Escalante was not legally authorized to work in the United States.  JA-315.
It then looked to this Court's decision in *Egbuna v. Time–Life Libraries, Inc.*,
153 F.3d 184 (4th Cir. 1998) (per curiam), in which a former employee
alleged that his former employer's refusal to rehire him was retaliatory.
JA-316. There, this Court decided that "[a] plaintiff is entitled to [Title VII]
remedies only upon a successful showing that the applicant was qualified
for employment" and that being qualified "is determined by whether the
applicant was authorized for employment in the United States at the time
in question." *Egbuna*, 153 F.3d at 187.  Accordingly, the district court
decided here that Escalante's undocumented status precluded him from
asserting a Title VII claim since "he has no standing or right to seek the
remedies under Title VII." JA-316.  The district court also rejected the
EEOC's argument that the Supreme Court's decision in *Hoffman Plastic*
*Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), finding coverage of
undocumented workers under the National Labor Relations Act ("NLRA"),
also supported a finding of coverage under Title VII given the similarity of
the definition of "employee" between the NLRA and Title VII.  *Id*.  The

7

court ruled that *Hoffman* was inapplicable to the EEOC's claim because

*Hoffman* involved a plaintiff seeking payment for work he was not allowed

to perform. *Id.* In conclusion, since the EEOC's subpoena was based solely

on Escalante's charge, the court dismissed the action. *Id.*

## SUMMARY OF ARGUMENT

The district court erred in refusing to enforce the Commission's

subpoena on the ground that the EEOC lacked authority to investigate the

charge of discrimination because the charging party was an undocumented

worker. The plain language of Title VII encompasses undocumented

workers in its scope of statutory protections. This is a subpoena

enforcement action designed to allow the EEOC to determine whether

there is any reasonable basis to believe that Maritime engaged in national

origin discrimination in violation of Title VII. In short, since more than

plausible basis for coverage exists, i.e. coverage is not plainly lacking, the

Commission's application for enforcement should have been granted.

Further, contrary to the district court's ruling, the EEOC's investigation is

not precluded by this Court's ruling in *Egbuna*, that made legal working

8

status a prerequisite to the recovery of relief by an alien worker in a lawsuit. The Supreme Court's subsequent decision in *Hoffman*, 535 U.S. 137, held that undocumented workers are covered by federal labor laws and entitled to relief. And, this is not a lawsuit on the merits where the standing of the individual to obtain a particular type of relief for the alleged discrimination may be a relevant inquiry.

ARGUMENT

THE DISTRICT COURT IMPROPERLY DENIED THE EEOC'S APPLICATION FOR ENFORCEMENT OF ITS SUBPOENA.

The district court erred when it refused to enforce the Commission's subpoena on the ground that the charging party Escalante lacked standing to recover remedies due to his undocumented worker status. To obtain judicial enforcement of a subpoena, the EEOC need demonstrate only that "(1) it is authorized to make such investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant." *EEOC v. City of Norfolk Police Dep't*, 45 F.3d 80, 82 (4th Cir.1995). A subpoena should be enforced unless the evidence sought is "plainly

9

incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943).

Further, the EEOC can "establish its authority to investigate" if it "present[s] an 'arguable' basis for jurisdiction." *EEOC v. Randstad*, 685 F.3d 433, 442 (4th Cir. 2012). In other words, "[a]s long as jurisdiction is 'plausible' and not 'plainly lacking,' . . . the subpoena should be enforced, unless the party being investigated demonstrates that the subpoena is unduly burdensome." *Id.* (internal citations omitted). *See also EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1430 (9th Cir. 1983) (en banc) (as long as "there is some 'plausible' ground for jurisdiction, or to phrase it another way, unless jurisdiction is 'plainly lacking,' the court should enforce the subpoena") (internal citation omitted); *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991) (same).

Here, the plain language of Title VII provides more than a plausible basis for coverage. In Title VII, the term "employee" is broadly defined as an "individual employed by an employer." 42 U.S.C. § 2000e(f). In defining "discrimination," Section 703 of Title VII states that it is an

10

unlawful employment practice for an employer "to . . . discharge *any*

individual, or otherwise to discriminate against *any* individual with respect

to his compensation, terms, conditions, or privileges of employment,

because of such individual's . . . national origin[.]"  42 U.S.C. § 2000e-2(a)(1)

(emphasis added).  Nothing in either provision explicitly excludes or

reasonably can be construed as excluding undocumented workers.  "Thus,

Title VII, by its sweeping language, would seem to encompass all

employees regardless of immigration and visa status."  *Iweala v. Operational*

*Tech. Svcs.*, 634 F. Supp.2d 73, 80 (D.D.C. 2009).  *See also Espinoza v. Farah*

*Mfg. Co., Inc.*, 414 U.S. 86, 95 (1973) ("Title VII was clearly intended to apply

with respect to the employment of aliens inside any State*"); EEOC v.*

*Tortilleria La Mejor*, 758 F. Supp. 585, 590 (E.D. Cal. 1991) ("the protections

of Title VII were intended by Congress to run to aliens, whether

documented or not, who are employed within the United States").  This

conclusion is especially compelling since Title VII's definition of

"employee" was not altered by the Civil Right Act of 1991, 42 U.S.C. §

1981a, which was adopted post-IRCA.

11

Furthermore, the Title VII provision setting out the administrative process supports EEOC's ability to investigate charges regardless of the immigration status of the charge filer. The provision authorizes charge filing by any "person claiming to be aggrieved," and an investigation of that charge. *See* 42 U.S.C. § 2000e-5(b). In that charging party Escalante was indisputably employed by Maritime and is a person alleged to be aggrieved by the employment practices of Maritime, he comes within the express terms of the statute and presents a plausible basis for coverage. Thus, the EEOC has the authority to investigate Escalante's charge.

The EEOC's authority to investigate "is not negated simply because the party under investigation may have a valid defense to a later suit." *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 651 (7th Cir. 2002). Indeed, a subpoena enforcement action generally is not the venue to determine whether a respondent like Maritime has a coverage or jurisdictional defense. *Kloster Cruise*, 939 F.2d at 922 ("It can no longer be disputed that 'a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular statute.'") (quoting

12

*EEOC v. Peat, Marwick, Mitchell & Co.*, 775 F.2d 928, 930 (8th Cir.1985)); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 584 (D.C. Cir. 2001) ("a subpoena enforcement action is not the proper forum in which to litigate disagreements over an agency's authority to pursue an investigation"); *FTC v. Gibson*, 460 F.2d 605, 608 (5th Cir. 1972) (holding that "appellants may not litigate the jurisdictional issue as a defense in a subpoena enforcement proceeding" where company argued that its activities did not involve interstate commerce). The oversight role of federal courts in subpoena enforcement proceedings is "sharply limited," *EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329, 332 (4th Cir. 1977), because the proceedings "are designed to be summary in nature." *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987). *See also EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475 (4th Cir. 1986) ("[a]dministrative subpoenas are subject only to limited judicial review").

The district court held otherwise, stating that "Escalante's legal qualification for employment is a mandatory prerequisite to the maintenance of his Title VII claim" and that "[b]ecause he is not legally

13

qualified to work in the United States, he has no standing or right seek the remedies under Title VII." JA-316. The court then concluded that because "the EEOC's application is premised solely on Escalante's complaint, it must be dismissed." *Id.* The district court's ruling is incorrect.

While it is true that certain very limited and unique circumstances can provide a basis for non-enforcement of a subpoena, such is not the case here. *See EEOC v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 182 (4th Cir. 2011) (observing that "claims of legislative immunity and privilege may assuredly be asserted to resist agency investigations into legislative acts"); *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1078 (9th Cir. 2001) (dismissing a subpoena enforcement action against an Indian tribe not subject to the ADEA because of its sovereignty status). Maritime has made no claim of legislative or sovereign immunity and the subject matter of the charge – national origin discrimination – is within the realm of Title VII.

The district court relied in part on *Egbuna* in refusing to enforce the Commission's subpoena. In *Egbuna*, the plaintiff, a Nigerian national, sued

14

his former employer under Title VII, alleging that the employer had

refused to rehire him in retaliation for his having participated in another

employee's discrimination suit and sought reinstatement, as well as back

pay, for work not performed. 153 F.3d at 185. Because his visa had

expired, the plaintiff was not authorized to work in the United States at the

time that he approached his former employer about being rehired. *Id.* This

Court decided that the plaintiff had no cause of action against his employer

because "his undocumented status rendered him ineligible both for the

remedies he s[ought] and for employment within the United States." *Id.* at

186. This Court ruled that a plaintiff is entitled to remedies under

"only upon a successful showing that the applicant was qualified for

employment," and explained that when a job "applicant is an alien, being

'qualified' for the position is not determined by the applicant's capacity to

perform the job—rather, it is determined by whether the applicant was an

alien authorized for employment in the United States at the time in

question." *Id.* at 187. As a result, this Court decided that Egbuna's former

employer had not violated Title VII as matter of law when it refused to

rehire him because Egbuna, at the time he applied to be rehired, was not a documented worker, and therefore was not qualified for the position he sought. *Id.* at 186. "[T]o rule Egbuna was entitled to the position he sought and to order [the employer] to hire an undocumented alien would nullify IRCA[.]" *Id.* at 188. It then concluded that Egbuna's inability to establish that he was legally qualified to work in the United States precluded him from pursuing the remedies he sought under Title VII. *Id.*

The district court is incorrect that *Egbuna* defeats the Commission's authority to exercise its subpoena authority. *Egbuna* was a hiring case in which this Court addressed whether "the applicant was qualified for employment" and entitled to reinstatement and back pay for work that had not been performed. In this case, Escalante was an individual employed by Maritime at the time he suffered workplace discrimination; his allegations concern his treatment during the course of his employment and not at the hiring stage. In contrast to *Egbuna,* if Escalante pursues his Title VII claims in court, part of the remedy would focus on obtaining a wage differential for work he performed at an allegedly discriminatorily lower pay and

16

injunctive relief to ensure that the employer adopt non-discriminatory work conditions. *See, e.g., Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306 (11th Cir. 2013) (undocumented aliens may recover their unpaid wages under the FLSA"); *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 243 (2d Cir. 2006) ("[A]n order requiring an employer to pay his undocumented workers the minimum wages prescribed by the [FLSA] for labor actually and already performed . . . does not . . . condone that violation or continue it. It merely ensures that the employer does not take advantage of the violation by availing himself of the benefit of undocumented workers' past labor without paying for it in accordance with minimum FLSA standards."); *Rosas et al. v. Alice's Tea Cup, LLC*, No. 14 Civ. 8788(JCF), 2015 WL 4097947, at *4 (S.D.N.Y. July 6, 2015) ("Because the plaintiffs here seek payment under the FLSA and the NYLL only for work already performed, the IRCA has no bearing on their ability to recover backpay.").

Additionally, the *Egbuna* court decided that the employer acted in accordance with IRCA when it refused to hire the plaintiff because his

work visa had expired, and thus he lacked legal authorization to work in the United States. 153 F.3d at 186. This Court stressed the employer's "hiring policy was to refuse uniformly to hire prospective alien employees who fail to produce valid identification and proof of authorization for employment." *Id.* at 185 n.1. In contrast, the employer in this action hired Escalante in violation of IRCA allegedly knowing he lacked the proper legal documents and allegedly helped facilitate and finance the acquisition of false documents for him. Nothing in *Egbuna* suggests that an employer like Maritime who violates IRCA should be permitted to use the undocumented status of the workers to defeat their claims of discriminatory treatment while employed and thus thwart the broad public policy supporting enforcement of the anti-discrimination laws. And this Court should not apply *Egbuna* to have this effect. *See Lucas v. Jerusalem Cafe, LLC,* 721 F.3d 927, 933 (8th Cir. 2013) ("employers who unlawfully hire unauthorized aliens must otherwise comply with federal employment laws"); *id.* at 933 ("Here, too, there is no 'reason why the fact that' the employers unlawfully hired the workers 'should exempt' them 'from

18

paying the' wages 'that if lawful' they 'would have to pay.'") (quoting *U.S. v. Sullivan*, 274 U.S. 259, 263 (1927)).

In any event, the core question of *Egbuna* was whether "the applicant was qualified" and eligible for any Title VII remedies. *See Egbuna*, 153 F.3d at 186-87. To constrain the EEOC's investigation into liability because, down the road, remedies available to Escalante may be limited is legally flawed for several reasons. First, even accepting the district court's conclusion that *Escalante* lacked standing to pursue Title VII remedies, this would not impede the *EEOC's* ability to bring a lawsuit and seek relief, including non-monetary injunctive relief addressing discriminatory work conditions. "The EEOC's right of action is independent of the employee's private action rights." *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987). The EEOC is not a proxy for the victims of discrimination and its enforcement suits are not representative actions. *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326 (1980). The Commission acts to vindicate the public interest in preventing employment discrimination. *Id.* Hence, the EEOC has been given broad authority to investigate

19

discrimination independent of the alleged victim's status or standing. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 n. 11 (2002) (noting that employee's arbitration agreement did not bar EEOC from pursuing victim-specific relief because "[w]e have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims"). The district court accordingly erred by halting the Commission's inquiry into Maritime's possible discrimination – a liability, not remedies, question.

Second, even as to Escalante, it is incorrect to hold that the possible limitation on certain remedies constrains any inquiry into liability. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1069 (9th Cir. 2004) ("The fact that a particular defendant's violation of Title VII might be "inconsequential," because the plaintiff in question is not eligible for certain forms of relief, merely "goes to the issue of damages, not liability.") (citation omitted). The Supreme Court's ruling in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), supports this point. Contrary to the district court's statement that *Hoffman* is inapplicable to the EEOC's claim that Escalante is

20

a covered "employee" under Title VII, JA-316, the Supreme Court's ruling

bolsters the EEOC's contention that undocumented workers are statutorily

protected by Title VII and entitled to relief, at a minimum with respect to

work already performed.  In *Hoffman*, the Supreme Court reviewed the

National Labor Relations Board's decision to award backpay to an

undocumented worker who was not legally authorized to work in the

United States but allegedly was fired for engaging in union activities.  535

U.S. at 140.  The Court ultimately held backpay was not available under the

NLRA, but it recognized the employer could be held liable for some relief.

*Id.* at 152.[2]   In so doing, the *Hoffman* Court noted that in *Sure-Tan, Inc. v.*

*NLRB*, 467 U.S. 883, 891 (1984), it had previously affirmed the Board's

---

[2] In *Hoffman*, the company hired Jose Castro based on documents "that appeared to verify his authorization to work in the United States."  535 U.S. at 140.  Eight months later, the company fired Castro and other employees for engaging in union activities. The National Labor Relations Board ("Board") found that the company had unlawfully terminated the employees and ordered backpay, reinstatement and other relief.  *Id.* At a hearing before an administrative law judge ("ALJ") to determine the backpay amount owed the discharged employees, Castro admitted to being a Mexican native unauthorized to work in the United States and to tendering an American friend's birth certificate.  *Id.* at 141.  Based on this information the ALJ ruled that the Board could not award Castro backpay because such relief would be in conflict with immigration laws. The Board rejected the ALJ's backpay ruling, but the Supreme Court ultimately reversed the Board on this issue.

21

determination that undocumented workers are covered by the NLRA. 535

U.S. at 144. Consequently, federal courts that have addressed the issue of

coverage of undocumented workers post-*Hoffman* consistently have

decided that undocumented workers are protected by the NLRA and other

employment laws. *See Lamonica*, 711 F.3d at 1306 ("the Court did not

disturb its prior holding that undocumented aliens 'plainly come within

the broad statutory definition of "employee" contained in the NLRA'");

*Agri Processor Co. v. NLRB*, 514 F.3d 1, 5 (D.C. Cir. 2008) ("there is

absolutely no evidence that in passing IRCA Congress intended to repeal

the NLRA to the extent its definition of 'employee' includes undocumented

aliens"); *id.* at 7 ("Nowhere in *Hoffman Plastic* did the Court hold that

leaves undocumented aliens altogether unprotected by the NLRA."); *Alice's

Tea Cup,* 2015 WL 4097947, at *3 ("federal courts have made 'clear that the

protections of the FLSA are available to citizens and undocumented

workers alike'") (internal citation omitted); *EEOC v. The Restaurant Co.*, No.

05-1656, 2007 WL 1576117, at *4 (D. Minn. May 31, 2007) ("Every court that

has considered the impact of *Hoffman Plastics* on Title VII either assumed or

22

concluded that undocumented workers have standing in their own right to obtain relief."); *see also Rivera*, 364 F.3d at 1070 (noting that some remedies are "clearly available").   In holding that the NLRA's broad definition of "employee" is similar to Title VII's definition in breadth, *Hoffman* supports the Commission's position that undocumented workers likewise are covered by Title VII. [3]

––––––––––––––––––––––

[3] The NLRA defines the term "employee" as

> *any employee*, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, *and shall include any individual* whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act [45 U.S.C. § 151 *et seq.*], as amended from time to time, or by any other person who is not an employer as herein defined.

29 U.S.C. § 152(3) (emphasis added).   Title VII defines the term "employee" as

> *an individual* employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.   The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws

The district court erred in deciding *Hoffman* is inapplicable to the EEOC's claim that it had subpoena authority because Escalante is a statutorily covered "employee" under Title VII. Factually, the cases concern similar coverage provisions. In both *Hoffman* and the instant action, the undocumented workers sought redress for wrongful conduct that arose out of an employment relationship to which they were not legally entitled. Although the Court in *Hoffman* rescinded the undocumented workers' backpay awards for work not performed, nothing in that ruling supports the district court's conclusion that an undocumented worker "has *no* standing or right to seek the remedies under Title VII." JA-316 (emphasis added). To the contrary, the *Hoffman* Court observed, the "[l]ack of authority to award backpay [under the NLRA] does not mean that the employer gets off scot-free. The Board here

_____

of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f) (emphasis added).

24

has already imposed other significant sanctions [including] . . . orders that Hoffman cease and desist its violations of the NLRA, and that it conspicuously post a notice to employees setting forth their rights under the NLRA and detailing its prior unfair practices [and the possibility of] . . . contempt proceedings should it fail to comply with these orders." 535 U.S. at 152.   Hence, *Hoffman* recognizes the availability of some statutory relief for undocumented workers under the NLRA.

*Hoffman* is contrary to the district court's application of *Egbuna*'s holding that Egbuna was entitled to no relief under Title VII.  *Hoffman* held that statutory coverage and some relief are still available to undocumented workers who work in the United States. [4]  As a result, *Hoffman* casts serious doubt on *Egbuna*'s holding that similar relief would not be available under Title VII because *Hoffman* undermines the rationale of *Egbuna*'s holding.  In deciding Title VII relief is not available to undocumented workers, the *Egbuna* Court concluded that because "IRCA thus statutorily disqualifies

---

[4] The Commission addresses whether *Hoffman Plastics* mandates coverage for undocumented workers under the comparable coverage provision of Title VII and not the distinct question of the types of remedies permitted under Title VII.

any undocumented alien from being employed as a matter of law," *Egbuna*,

153 F.3d at 187, "to rule Egbuna was entitled to the position he sought and

to order [the employer] to hire an undocumented alien would nullify

IRCA, which declares it illegal to hire or to continue to employ

unauthorized aliens." *Id.* at 188.  However, as the dissent in *Egbuna* noted,

because "[n]othing in IRCA suggests that Congress intended to limit the

rights of undocumented aliens under federal labor and anti-discrimination

laws, . . . the legislative history explicitly cautions that IRCA should not be

interpreted as extinguishing an undocumented alien's rights under these

statutes." *Id.*  In fact, when Congress enacted IRCA to address the "large-

scale influx of undocumented aliens," it stated that "the most humane,

credible and effective way to respond" to the problem was to penalize

those employers who hired undocumented workers.  H. R. Rep . No. 99–

682(I), at 46 (1986), as reprinted in 1986 U.S.C.C.A.N. 5649, 5650.

Additionally, Congress made clear in another report that:

> [T]he committee does not intend that any provision of this Act would
> limit the powers of State or Federal labor standards agencies such as
> the ... Equal Employment Opportunity Commission ... to remedy
> unfair practices committed against undocumented employees for

26

exercising their rights before such agencies or for engaging in
activities protected by these agencies.

House Comm. on Educ. and Labor, H.R.Rep. No. 99–682(II), at 8–9 (1986),

reprinted in 1986 U.S.C.C.A.N. 5757, 5758, quoted in *Egbuna*, 153 F.3d at

188 (Ervin, J., dissenting).  Hence, "Congress did not intend that the IRCA

amend or repeal any of the previously legislated protections of the federal

labor and employment laws accorded to aliens, documented or

undocumented, including the protections of Title VII." *Tortilleria La Mejor*,

758 F. Supp. at 593-94.

     This is the prevailing view, as most courts that have addressed the

remedy issue post-*Hoffman* have resolved that undocumented workers are

entitled to the protection of federal laws since denying them relief "would

'permit[] abusive exploitation of workers' and 'create[] an unacceptable

economic incentive to hire undocumented workers by permitting

employers to underpay them[.]'" *Alice's Tea Cup*, 2015 WL 4097947, at *3

(internal citations omitted).  Consequently, post-*Hoffman* courts have

recognized that "prohibiting employers from hiring unauthorized aliens is

27

in harmony with requiring employers—including those who break immigration laws by hiring unauthorized workers—to provide fair working conditions and wages." *Lucas*, 721 F.3d at 936-37. "Allowing such recoveries would not trench on federal immigration policy because, although the compensatory awards would stem from illegal relationships, employers could avoid the result by complying with IRCA and refusing to hire illegal aliens in the first place." *Madeira*, 469 F.3d at 248.

The question of whether and what type of relief might be available in a Title VII merits action is premature in the context of a subpoena enforcement action regardless of whether *Egbuna* is limited to the hiring context or whether it remains viable post-*Hoffman*. As this Court observed in *Washington Suburban*, 631 F.3d at 181-82, "[t]he EEOC is not bringing suit against [the employer] for [statutory] violations; it is merely investigating possible [unlawful] discrimination at [the company]. Moreover, the EEOC is only in the early stages of that investigation. At this point, it is simply unknown whether the EEOC's investigation will ripen into a lawsuit[.] *** It would be premature to refuse to enforce the modified subpoena now

28

because a legitimate claim . . .  might ripen at some point down the road."

Here, the EEOC has not yet determined whether a statutory violation exists

or whether legal action is warranted, nor has it issued Escalante a right to

sue notice – a precondition to filing a lawsuit.  Thus, Escalante's standing

and immigration status need not be considered in this subpoena

enforcement action.

CONCLUSION

For the reasons stated above, the Commission urges this Court to

reverse the district court's judgment and enforce the EEOC's subpoena.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

_____
s/PAULA R. BRUNER
Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
(202) 663-4731
paula.bruner@eeoc.gov

30

## CERTIFICATE OF COMPLIANCE

This corrected brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because it contains  5,515 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This corrected brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because it has been prepared in a proportionally spaced typeface using

Microsoft Word 2007 in Palatino Linotype 14 point.


_____

s/Paula R. Bruner
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, N.E., 5th Floor
Washington, D.C. 20507

Dated:  October 5, 2015

31

<u>CERTIFICATE OF SERVICE</u>

I, Paula R. Bruner, hereby certify that on October 14, 2015, I electronically

filed the foregoing corrected brief with the Court via the appellate CM/ECF

system.  I also certify that the following counsel of record, who has

consented to electronic service, will be served the foregoing corrected brief

via the appellate CM/ECF system and provided a hard copy by regular

mail:


<u>Counsel for Respondent–Appellee</u>:

John D. Vander Woude, Esq.
Eccleston &Wolf, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD  21076-1378


s/Paula R. Bruner
Attorney